```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


EDWIN O. OGBOLU,                     §
                                     §
            Plaintiff,               §
                                     §
v.                                   §
                                     §
UNITED STATES IMMIGRATION AND        §   CIVIL ACTION NO. H-06-0115
CUSTOMS ENFORCEMENT and              §
OFFICERS ROBERT SHIFLETT,            §
JESUS VAZQUEZ, NAVARRO, and          §
JOHN DOE, In Their Official          §
and Individual Capacities,           §
                                     §
            Defendants.              §
```

**MEMORANDUM OPINION AND ORDER**

Pending before the court are Defendant's Motion to Dismiss filed by the United States Immigration and Customs Enforcement ("ICE") (Docket Entry No. 25) and Defendants' Motion for Summary Judgment filed by Robert Shiflett ("Shiflett") and Jesus Vazquez ("Vazquez") (Docket Entry No. 26). For reasons stated below, ICE's motion to dismiss will be granted, and Shiflett and Vazquez's motion for summary judgment will be granted in part and denied in part.

**I.   Factual and Procedural Background**

Plaintiff, Edwin Ogbolu, is a detainee in a facility run by the Corrections Corporation of America ("CCA"). In March of 2004 Shiflett was employed as a deportation officer with the ICE in

Houston, Texas.[1]  At the request of Special Assistant U.S. Attorney ("SAUSA") Howard Rose, plaintiff was transported to the Houston Office of the ICE on March 22, 2004.  Pursuant to Mr. Rose's instructions, Shiflett served plaintiff with copies of motions relating to plaintiff's petition for writ of habeas corpus.[2]  Shiflett contends that he was asked to obtain plaintiff's signature and fingerprints on the first page of the documents in order to verify plaintiff's receipt.[3]

### A.   Plaintiff's Version of the Incident

Plaintiff states that he signed the documents but hesitated to submit to fingerprinting because he believed that it was not required.[4]  Plaintiff contends that Shiflett then berated plaintiff with racial epithets and caused other ICE officers (Vazquez, Navarro, and Ybarra) to surround plaintiff.[5]  At that point, plaintiff alleges that Vazquez grabbed him, and with the help of Navarro, twisted his arm, handcuffed him, and tried to pry open

---

[1] Shiflett is currently employed by the U.S. Department of Homeland Security—ICE, Detention and Removal Section, in Washington, D.C.  Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 26, Exhibit A, Declaration of Robert Shiflett, p. 1.

[2] Id. at p. 2.

[3] Id.  Shiflett states that verification of receipt was necessary because plaintiff "had a history of claiming to not receive documents pertinent to his immigration case."  Id.

[4] Plaintiff's Response to Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 34, p. 2.

[5] Id.

plaintiff's fingers.[6]  Plaintiff states that he complied with Shiflett's order to get on his knees but that Shiflett then kicked plaintiff in the back, punched him in the ears, lifted him by the handcuffs, slammed his face on the concrete floor, and drove his knee into plaintiff's back.[7]  Plaintiff alleges that Vazquez, Navarro, and Ybarra then pinned plaintiff's head to the floor while Shiflett forcibly took his fingerprints and that he was sent back to the CCA with visible injuries, including a swollen left eye.[8]  Plaintiff claims that once back at the CCA he requested medical attention but was denied treatment by the clinic administrator.[9]  He then made a formal request for medical attention and was treated at a clinic a few days later.[10]

As a result of this encounter, plaintiff alleges that he suffered a facial contusion, strained/sprained back and knees, kidney injuries, eye injuries, impaired vision, headaches, a dislocated right index finger, and incontinence.[11]  Plaintiff also contends that he now must use a plastic bag strapped to his

---

[6]Id.

[7]Id.

[8]Id.

[9]Plaintiff's Response to Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 34, Exhibit 1, Declaration of Edwin Ogbolu, p. 3.

[10]Plaintiff's First Amended Original Complaint, Docket Entry No. 18, p. 6.

[11]Plaintiff's Response to Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 34, p. 2.

shoulders in order to urinate and that his urine contains blood and "other unspecified liquids," which was caused by the lack of immediate medical care.[12]

**B.     Defendants' Version of the Incident**

Shiflett and Vazquez's recollection of the March 22, 2004, incident are essentially identical.[13] Both defendants state that fingerprinting detainees is a customary procedure done to acknowledge receipt of documents served on a detainee.[14] Shiflett states that plaintiff signed the documents, but refused to be fingerprinted.[15] Shiflett states that he attempted to "physically direct [plaintiff] to the fingerprinting station by grasping his elbow and pulling him toward the station," but plaintiff resisted.[16] After "several failed attempts" Shiflett asked Vazquez and Kenneth Mitchell (another ICE agent) to assist him in obtaining plaintiff's fingerprints.[17] To accomplish this, and "for officer safety," the three officers placed handcuffs on plaintiff.  Defendants state

---

[12] Id.

[13] Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 26, Exhibit A Declaration of Robert Shiflett, and Exhibit B, Declaration of Jesus Vazquez.

[14] Id. Exhibit A, p. 2 and Exhibit B, p. 1.

[15] Id. Exhibit A, p. 3.  Shiflett states that it is his belief that plaintiff refused fingerprinting when he realized that it would provide indisputable evidence of receipt.  Id.

[16] Id.

[17] Id. at pp. 3-4.

that plaintiff's arm was not twisted or injured in this process.[18] Defendants contend that when plaintiff made his hand into a fist they asked plaintiff to move to a kneeling position and assisted him to his knees.[19] They then instructed plaintiff to move to a "prone position" on his stomach by rolling on his right buttock, then to his right side, then to his stomach with his face turned to the left side.[20] According to Shiflett, this technique is learned at the law enforcement academy and is designed to maximize officer safety. Shiflett insists that the technique was not used in an abusive manner.[21] Once plaintiff was on his stomach, defendants pried his right index finger open, applied a small inkpad, and placed the fingerprint on the document.[22] Shiflett contends that plaintiff's remaining three fingerprints were taken with minimal resistance, the handcuffs were removed, and plaintiff was assisted to a standing position.[23] Vazquez does not indicate whether plaintiff continued to resist fingerprinting after the first print

---

[18]Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 26, Exhibit A, Declaration of Robert Shiflett, p. 4, and Exhibit B, Declaration of Jesus Vazquez, p. 2.

[19]Id. Exhibit A, p. 4 and Exhibit B, p. 2.

[20]Id. Exhibit A, p. 4.

[21]Id.

[22]Id. at p. 5, Exhibit B, p. 2.

[23]Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 26, Exhibit A, Declaration of Robert Shiflett, p. 5.

was taken, but states that plaintiff was not resistant in any respect after the fingerprinting was finished.[24]  Defendants claim that plaintiff was asked whether he was injured, but that plaintiff responded that he was not injured.[25]

**C.   This Action**

Based on his version of the March 22, 2004, incident, plaintiff filed this lawsuit on February 9, 2005, against the ICE and Officers Shiflett, Vazquez, Navarro, and "John Doe."[26] Plaintiff alleges that the ICE is liable for his injuries under state tort law for negligent hiring, training, and supervision and under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674, for assault and battery, negligence, and intentional infliction of emotional distress.[27]

Plaintiff claims that the individual officers are liable, both in their official and individual capacities, for violating plaintiff's Fourth and Eighth Amendment rights by using excessive force and by denying plaintiff adequate medical care.[28]  He also claims that the officers are liable under state law for assault and

---

[24] Id. Exhibit B, p. 2.

[25] Id. Exhibit A, p. 5, Exhibit B, p. 2.

[26] Plaintiff's First Amended Original Complaint, Docket Entry No. 18.  Plaintiff first brought this suit in the Southern District of Texas, Galveston Division, but it was later transferred to this court.  Order to Transfer, Docket Entry No. 12.

[27] Id. at pp. 7-9.

[28] Id. at p. 6.

battery, negligence, and intentional infliction of emotional distress.[29]

## II. ICE's Motion to Dismiss

### A. Standard of Review—Dismissal Under Rule 12(b)(1)

Motions filed under Rule 12(b)(1) challenge the court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims. See, e.g., Stockman v. Federal Election Comm'n, 138 F.3d 144, 151 (5th Cir. 1998). The court must therefore always be mindful of "the first principle of federal jurisdiction," which requires a federal court to dismiss an action whenever it appears that subject matter jurisdiction is lacking. Stockman, 138 F.3d at 151 (internal quotations omitted). Accordingly, there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court. Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996); see also, Stockman, 138 F.3d at 151; Epps v. Bexar-Medina-Atascosa Counties Water Improvement, 665 F.2d 594, 595 (5th Cir. 1982).

### B. Analysis

#### 1. Proper Defendant

Defendant ICE first argues that plaintiff's FTCA claims against it must be dismissed because the proper defendant under the

---

[29] Id. at p. 7.

FTCA is the United States, not a federal agency.  Plaintiff does not attempt to rebut this assertion.[30]  "It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a Federal Tort Claims Act suit. . . . Thus, an FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction."  Galvin v. Occupational Safety & Health Admin., 860 F.2d 181, 183 (5th Cir. 1988).  For this reason, the court lacks jurisdiction over plaintiff's FTCA claims against the ICE.

    2.   Exhaustion of Administrative Remedies

ICE also argues that the court lacks jurisdiction over plaintiff's FTCA claims because plaintiff failed to present his claim to the agency within two years of the injury, as required by the FTCA.  The relevant statute provides:

> An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make a final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.  28 U.S.C. § 2675(a).

In Adams v. United States, 615 F.2d 284, 288 (5th Cir.), clarified, 622 F.2d 197 (5th Cir. 1980), the Fifth Circuit quoted from the legislative history of the Act in observing that

---

[30]Plaintiff's Response to Defendant United States Immigration and Customs Enforcement's Motion to Dismiss, Docket Entry No. 35.

> in enacting the notice requirement, Congress sought "to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States."

See also Montoya v. United States, et al., 841 F.2d 102, 104 (5th Cir. 1988). "An individual with a claim against the United States . . . satisfies section 2675's requirement that 'the claimant shall have first presented the claim to the appropriate Federal agency' if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." Adams, 615 F.2d at 289; see also Transco Leasing Corp. v. United States, 896 F.2d 1435, 1442 (5th Cir.), amended in part on other grounds, 905 F.2d 61 (5th Cir. 1990). Pursuant to 28 U.S.C. § 2672, the Attorney General has promulgated regulations designed to facilitate the administrative negotiations and settlement process. 28 C.F.R. 14.1–14.10. Section 14.2(a) provides the elements constituting notice for purposes of 28 U.S.C. § 2675: a written notification of the injury-causing incident accompanied by a claim for money damages in a sum certain for the injury. See Montoya, 841 F.2d at 104.

ICE states that it never received notice of plaintiff's claims. In support of this argument ICE points to the affidavit of Melinda Cooper, a paralegal with the U.S. Department of Homeland Security, ICE. Ms. Cooper states that, in her thorough examination

-9-

of the records of administrative claims filed pursuant to the FTCA, she found no such claims filed by plaintiff.[31]

Plaintiff refutes this argument by pointing to a letter sent on March 29, 2004, to the Inspector General, Department of Homeland Security.[32] In this letter plaintiff described the alleged abuse and stated "I'm requesting that the Inspector General investigate this matter. I'm afraid of Officer Shiflett and fear for my life. I don't want to have any contact with Officer Shiflett. I also want all the documents voided that were finger printed under duress and coercion."[33]

On April 27, 2004, David Venturella, Acting Director of Detention and Removal Operations, responded to plaintiff, stating "This response is provided to you by the [ICE]. . . . [Y]our complaint of abuse is being referred to the Department of Homeland Security's Office of Professional Responsibility . . . for appropriate follow up."[34] On May 26, 2004, plaintiff received a letter from Timothy Keefer, Chief Counsel for the Office for Civil Rights and Civil Liberties, notifying him that his complaint would be reviewed by the Office of Professional Responsibility within the

---

[31]ICE's Motion to Dismiss, Docket Entry No. 25, Exhibit A.

[32]Plaintiff's Response to Defendant United States Immigration and Customs Enforcement's Motion to Dismiss, Docket Entry No. 35, Exhibits 1 and 2.

[33]Id. Exhibit 1, p. 2.

[34]Id. Exhibit 3.

ICE.[35] Diane Weaver, the director of the Office of Equal Employment Opportunity ICE, and William Howard, the principal legal advisor to the ICE, were sent copies of this letter.[36] On June 14, 2005, plaintiff received a final letter from Timothy Keefer stating, "based on our review of the facts and the record that the ICE made available to us, we have determined that ICE has addressed the issues raised in your letter."[37]

Plaintiff argues that his March 29, 2004, letter provided sufficient notice of the incident giving rise to his claim and that the responses he received prove that such notice was received by ICE.[38] While no particular form of notice is required, a value must be placed on the claim and accompany the notice. Wardsworth v. United States, 721 F.2d 503, 505 (5th Cir. 1983) (quoting Adams 615 F.2d at 289). Plaintiff's letter fails to suggest a dollar amount or even mention damages. Plaintiff's letter therefore failed to meet the notice requirement of § 2675.[39] Cf. Montoya, 841 F.2d at

---

[35] Id. Exhibit 4, p. 1.

[36] Id. Exhibit 4, p. 2.

[37] Id. Exhibit 5.

[38] Plaintiff's Response to Defendant United States Immigration and Customs Enforcement's Motion to Dismiss, Docket Entry No. 35, pp. 5-6.

[39] Plaintiff argues that ICE has not argued that the notice was inadequate, only that it was never received and, therefore, proof of receipt is sufficient to survive summary judgment. Plaintiff's Response to ICE's Motion to Dismiss, Docket Entry
(continued...)

105 (holding notice invalid where plaintiff failed to quantify her personal injury claim); Bryan v. Stevens, et al., 169 F. Supp.2d 676, 687 (S.D. Tex. 2001) (holding notice invalid where plaintiff stated only that he had incurred damages through "medical bills" and "pain, suffering, and mental anguish").  Because plaintiff failed to submit adequate notice to the agency within two years of the incident, his FTCA claims are barred.  28 U.S.C. § 2401(b).

### III. Shiflett and Vazquez's Motion for Summary Judgment

**A. Standard of Review**

Summary judgment is warranted when evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Id. at 2511.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits

---

[39](...continued)
No. 35, p. 6.  Federal courts have repeatedly held that the sum certain requirement is a jurisdictional one (see Wardsworth, 721 F.2d at 505), making it proper for the court to consider it sua sponte.

that demonstrate the absence of genuine factual issues. Celotex Corp., 106 S. Ct. at 2553. In response to such a showing, the nonmoving party must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating the existence of genuine issues of material fact that must be resolved at trial. Id.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. Houston, 246 F.3d 344, 348 (5th Cir. 2001). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

**B.    Plaintiff's Bivens Claims**

    1.    Official Capacity

Defendants first argue that plaintiff may only allege a Bivens claim against them in their individual, rather than official, capacities.[40] Plaintiff responds that the Supreme Court's holding in Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 91 U.S. 388 (1971), supports this claim.[41]

---

[40] Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 26, p. 5 ¶ 4.

[41] Plaintiff's Response to Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 34, p. 8, ¶ C.

In Bivens the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages. Id. However, this cause of action has not been extended to create liability for federal officers in their official capacities. Affiliated Prof'l Home Health Care Agency v. Shalala, 164 F.3d 282, 286 (5th Cir. 1999) ("Bivens provides a cause of action only against government officers in their individual capacities."); Williamson v. United States Dep't of Agric., 815 F.2d 368, 380 (5th Cir. 1987) ("[The Bivens] right of action only applies against the individual appellees in their individual capacities."). Accordingly, the court concludes that any Bivens claim against the defendants in their official capacities should be dismissed.

2. Individual Capacity

To maintain a Bivens claim against defendants in their individual capacities, plaintiff must allege facts demonstrating that they caused plaintiff to suffer a deprivation of a right or interest protected by the Constitution. Cronn v. Buffington, 150 F.3d 538, 544 (5th Cir. 1998); Davis v. Passman, 99 S. Ct. 2264, 2278 (1979). Plaintiff alleges that he was subjected to excessive force and denied medical care in violation of the Fourth and Eighth Amendments.[42] However, because plaintiff is an immigration detainee

---

[42] Plaintiff's First Amended Original Complaint, Docket Entry No. 18, pp. 6-7.

-14-

whose imprisonment did not directly result from conviction of a crime, his constitutional claims are properly considered under the due process clause instead of the Eighth Amendment. Edwards v. Johnson, 209 F.3d 772, 778 (5th Cir. 2000) ("a person detained for deportation [is] the equivalent of a pretrial detainee"). Also, because the alleged abuse occurred "after the incidents of arrest [were] completed, after the plaintiff [had] been released from the arresting officer's custody, and after the plaintiff has been in detention . . . for a significant period of time," the Fourth Amendment does not extend to plaintiff's claims. Valencia v. Wiggins, 981 F.2d 1440, 1443 (5th Cir. 1993). Because defendants are federal officers, the Fifth Amendment's Due Process Clause applies to both plaintiff's excessive force and denial of medical care claims.

    (a)   Excessive Force

In considering a pretrial detainee's claims against a state prison official, the Fifth Circuit held that it is "impractical to draw a line between convicted prisoners and pretrial detainees" in excessive force cases. Valencia, 981 F.2d at 1146. The court therefore applied the Supreme Court's Eighth Amendment standard even though the plaintiff's claims technically arose under the Fourteenth Amendment. Id.; see also United States v. Daniels, 281 F.3d 168, 179 (5th Cir. 2002) (explaining the court's holding in Valencia). The appropriate standard focuses on "whether the force

-15-

was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 106 S. Ct. 1078, 1085 (1986); Valencia, 981 F.2d at 1146. To resolve this question, "the trier of fact would need to examine 'the need for the application of force,' and the 'threat reasonably perceived' by the detention facility official." Valencia, 981 F.2d at 1446 (quoting Whitley, 106 S. Ct. at 1085).

Plaintiff and defendants offer completely different versions of the events of March 22, 2004. While defendants contend that plaintiff was not injured, plaintiff's response alleges that he was severely beaten.[43] Plaintiff and defendants' declarations satisfy the requirements of 28 U.S.C. § 1746 to be considered as competent summary judgment evidence. See Hart v. Hairston, 343 F.3d 762, 765 (5th Cir. 2003) (holding that a declaration signed under penalty of perjury and verifying that the contents are true and correct was competent summary judgment evidence).

The court cannot "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence" on a summary judgment motion. Honore, 833 F.2d at 567. Because resolution of these facts is necessary to determine whether defendants acted "in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of

---

[43]Plaintiff's Response to Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 34, Exhibit 1, Declaration of Edwin Ogbolu, p. 3 ¶ 5.

causing harm," the court concludes that genuine issues of material fact exist with regard to plaintiff's excessive force claim.

(b)   Denial of Medical Care

The Fifth Circuit has held that liability for failure to provide medical care attaches only when a prison official's failure to act amounts to subjective deliberate indifference to a pretrial detainee's rights.  Hare v. City of Corinth, 74 F.3d 633, 643, 648 (5th Cir. 1996).[44]  Subjective deliberate indifference means that "the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk."  Id. at 650.

The different versions of the incident offered by plaintiff and defendants are crucial in determining whether defendants were subjectively, deliberately indifferent to plaintiff's injuries. While defendants state that plaintiff showed no signs of injury and told defendants that he was not hurt,[45] plaintiff alleges that his face was bruised and swollen and that he could not walk straight.[46]

---

[44]This standard applies to claims which arise from "episodic acts or omissions" rather than "general conditions, practices, rules, or restrictions of pretrial confinement."  Hare, 74 F.3d at 643.

[45]Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 26, Exhibit A, Declaration of Robert Shiflett, p. 5 ¶ 9, and Exhibit B, Declaration of Jesus Vazquez, p. 2 ¶ 5.

[46]Plaintiff's Response to Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 34, Exhibit 1, Declaration of Edwin Ogbolu, p. 3 ¶ 7.

The court concludes that on the record before it genuine issues of material fact exist with regard to plaintiff's denial-of-medical-care claim.

(c)  Qualified Immunity

Defendants also seek summary judgment based on their defense of qualified immunity.[47]  Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982).  Because adjudication of this defense will require the court to resolve disputed facts surrounding the incident, summary judgment is inappropriate.

## IV.  Conclusion and Order

For the reasons stated in part II of this Opinion, the court concludes that it lacks jurisdiction over plaintiff's FTCA claims against the ICE.  Accordingly, defendant ICE's Motion to Dismiss (Docket Entry No. 25) is **GRANTED**, and plaintiff's FTCA claims are **DISMISSED with prejudice**.  Plaintiff has also alleged that ICE is liable for negligent hiring, training, and supervision under state

---

[47]Plaintiff's Response to Defendants Robert Shiflett's and Jesus Vazquez's Motion for Summary Judgment, Docket Entry No. 34, p. 4 ¶ 3.

law.⁴⁸  The court is skeptical whether plaintiff could survive a sovereign immunity defense as to these claims.⁴⁹  Accordingly, by November 15, 2006, plaintiff will provide the court with authorities and argument why these claims should not be dismissed sua sponte for lack of jurisdiction.

For the reasons stated in part III of this Opinion, the court holds that plaintiff's Bivens claims against defendants in their official capacities are not cognizable, but genuine issues of material fact exist with regard to such claims in their individual capacities.  Defendants Shiflett and Vazquez's Motion for Summary Judgment (Docket Entry No. 26) is therefore **GRANTED in part and DENIED in part**, and plaintiff's Bivens claims against defendants in their official capacities are **DISMISSED with prejudice**.

**SIGNED** at Houston, Texas, on this 1st day of November, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

⁴⁸Plaintiff's First Amended Original Complaint, Docket Entry No. 18, p. 7.

⁴⁹Plaintiff should note that federal agencies are not subject to liability for damages under Bivens.  Federal Deposit Ins. Co. v. Meyer, 114 S. Ct. 996, 1006 (1994).